JOSEPH O. CARTER and GEO. R. CARTER, Trustees under the Will of H. A. P. Carter, deceased, *v.* MARY S. CARTER and her minor children, HENRY A. P. CARTER and GRACE S. CARTER, by their Guardian *ad litem* A. S. Hartwell.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

SUBMITTED APRIL 28, 1896.     DECIDED MARCH 15, 1897.

FREAR, J. ; AND PERRY, CIRCUIT JUDGE, AND W. R. CASTLE, ESQ., OF THE BAR, IN PLACE OF JUDD, C.J., AND WHITING, J., DISQUALIFIED.

A testator bequeathed the income of one-sixth of certain real and personal property to one of his sons for life, and after his death devised and bequeathed the said one-sixth to that son's "heirs to be divided as now prescribed by the laws of this Kingdom (now Republic) in cases of persons dying intestate." Held, that the "heirs" were those

who would take under the statute of descent, and that, although the wife would be an heir if there were no children, yet upon the son's death leaving children, the wife took nothing.

The testator made similar devises and bequests to his wife and other children also, and their heirs respectively, and provided that "should any of the said beneficiaries die before me leaving husband, wife, or children the share left to that beneficiary shall descend to such children or other heirs as if such beneficiary had survived me." Held, that this clause does not show an intention on the part of the testator that the son's wife should take even though there were children.

By Sec. 1299 of the Civ. Code, the wife is "entitled, by way of dower, to an absolute property in the one-third part of all his movable effects, in possession, or reducible to possession, at the time of his death, after payment of all just debts." Held, that the estate created by this provision is a dower estate and not an estate by descent.

OPINION OF THE COURT BY FREAR, J.

The plaintiffs are the trustees under the will of Henry A. P. Carter, late of Honolulu, deceased, which will was admitted to probate December 30, 1891. After making certain specific bequests, the testator devised and bequeathed the residue of his "estates, real and personal," to trustees in trust, among other things, "To hold one-sixth of my said estates in trust for my son Charles L. Carter, the income thereof to be paid him in quarterly payments for the term of his natural life and after his death I give, devise and bequeath the said one-sixth to his heirs, to be divided as now prescribed by the laws of this Kingdom (now Republic) in cases of persons dying intestate." There were similar provisions for the testator's wife, three daughters and one other son, and their heirs respectively. The said Charles survived the testator and afterwards deceased, leaving his wife, Mary S. Carter, and their children, Henry A. P. Carter and Grace S. Carter, the defendants herein, and no other heirs.

This is a bill in equity brought by the trustees for instructions as to whether, upon the foregoing facts, the said children alone or

the said children and the said widow together are entitled to "the said one-sixth" devised and bequeathed to the "heirs" of the said Charles, by the clause of the will above set forth. The Circuit Judge entered a decree *pro forma* in favor of the children alone, by consent of the widow without prejudice to her right of appeal, and the case comes here on her appeal from that decree.

The question · is, whom did the testator intend to include under the term "heirs," as shown by the language of his will? We cannot enter into any speculations as to what he may have intended in fact. The question is, what was his expressed intention? He might have intended to include almost any class of persons under the term "heirs" and his intention would be carried out if it were expressed with sufficient clearness and were not contrary to any rule of law. In this case it is conceded that the persons who are to take as heirs were intended by the testator to be determined by reference to the Hawaiian statutes. Only two statutes, or rather two portions of the Civil Code, are called in question. One is Ch. 32 (Comp. L. p. 474), entitled "Of the Descent of Property, both Real and Personal," of which the portions involved in this case are: "Sec. 1447. Whenever any person shall die intestate within this Kingdom (now Republic), his property, both real and personal, of every kind and description, shall descend to and be divided among his heirs, as hereinafter prescribed. Sec. 1448. The property shall be divided equally among the intestate's children. * * * If the intestate shall leave no issue, his estate shall descend one-half to his widow * * *." It is obvious that if this statute alone, relating to descent, is to govern, the widow takes nothing, because, although she would be an heir if there were no children (*Thurston v. Allen*, 8 Haw. 392), yet, there being children, they alone are the heirs. The other statute involved is the first section of Article 54, (Comp. L. p. 429), entitled "Of Dower," which reads as follows:

"Sec. 1299. Every woman shall be endowed of one-third

part of all lands owned by her husband at any time during marriage, in fee simple, in freehold, or for the term of fifty years or more, so long as twenty-five years of the term remain unexpired, but in no less estate, unless she is lawfully barred thereof; she shall also be entitled, by way of dower, to an absolute property in the one-third part of all his movable effects, in possession, or reducible to possession, at the time of his death, after payment of all his just debts." A formal claim is made that the widow is entitled to take under both portions of this section, but it is so obvious that she cannot take as an heir under the first part of the section, which clearly relates to dower, that the claim under that portion of the section is not pressed. The claim under the latter portion of the section is relied on.

Two grounds are urged in support of the view that the widow may take under the latter portion of this section. One is that it appears from the language of the will that the testator intended that the widow should take in any event and that since she cannot take under the statute of descent she must take under this statute. The portion of the will relied on to show such an intention reads thus: "Should however any of the said beneficiaries die before me leaving husband, wife, or children the share left to that beneficiary shall descend to such children or other heirs as if such beneficiary had survived me." The argument is, that the use of the words "such children, or other heirs" shows that the word "heirs" was intended to include "wife" mentioned a little before in the words "husband, wife, or children," and that therefore the testator intended or understood that the wife should take as one of the "heirs" and that since she could not take in that capacity under any other statute, she must take under the latter part of the section in question. We grant that the word "heirs" may include "wife" and that the testator so intended; but it does not follow that he intended that word to include "wife" under all circumstances. On the contrary, he expressly directs that the property shall go to "such children *or* other heirs," and that is precisely what we

should expect him to say if he had in mind only the statute of descent, for that provides that the children *or* wife, not the children *and* wife, shall inherit. This portion of the will, indeed, supports the view that the testator had in mind only the statute of descent, rather than the view in support of which it is relied on. Again, if "heirs" here includes "wife," it includes "husband" also, for the words are "husband, wife, or children," and therefore if, upon the death of the son, as in this case, the wife is to take as well as the children, then also, upon the death of a daughter, leaving husband and children, the husband must take as well as the children, for the will contains similar provisions for both sons and daughters and their heirs respectively, but there is no statute under which a husband can take corresponding to the statute in question relating to dower. There is therefore nothing to show that the testator intended that the word heirs should include those who would take under the statute of dower. On the contrary, the following considerations, in addition to those already mentioned, go to show that he had in mind only the statute of descent. (1) He uses almost the identical language of Section 1447 above set forth relating to descent, namely, "his heirs," "be divided," "as prescribed," "this Kingdom," "person," "dying intestate," these words being changed merely in their order, to suit the grammatical construction of the sentence. (2) He expressly directs that the property shall go to the "heirs," which not only is the word used in the statute of descent, while "dower" only is used in the other statute, but it is the appropriate word to denote those who take by inheritance. (3) He expressly directs that the division shall be made as in the case of a person dying "intestate," and the statute of descent provides for the division in such cases specifically, while the other statute as we shall see provides for a division in any event whether the person dies intestate or not. (4) Since the two provisions in question are in two different statutes, one of which expressly relates to descent and the other to dower, and since the testator, as shown by a subsequent portion of the will in which he speaks of dower

in its correct sense, was well aware of the distinction between descent and dower, he would in all probability have expressed himself more clearly if he had intended the statutes of descent to include a portion of the statute that was expressly made relative to dower. Indeed the will is carefully drawn throughout and the testator evidently selected his words with care and used them in their correct sense. The clause of the will in question was apparently inserted merely for the purpose of providing that the property should go in the same way whether the beneficiary survived the testator or not; it does not show that the testator understood the word "heirs" as used in the first part of the will in any other than its natural and ordinary sense.

Assuming then that the testator merely intended that the estate should go to the "heirs" whoever they might be under the statutes, the second ground relied on to show that the wife should take under the latter part of the section relating to dower is that the estate described therein is in fact, as shown by its nature and its historical origin, an estate by descent or distribution, notwithstanding the fact that it is described as being "by way of dower."

Of the many elements enumerated in the various definitions of dower, perhaps only two are found to exist universally, namely that dower cannot be defeated by will and that it is a marital right. These are the principal elements which it is contended the estate in question does not possess, as shown both by its nature and its history.

It is argued in the first place that the husband may defeat the estate by will and that this has been generally recognized in practice. This is the first time that we have ever heard this so much as suggested. The statute of wills (Comp. L. p. 479) expressly provides: "Section 1476. Nothing contained in this chapter shall be so construed as to conflict with the law relating to dower." "The law relating to dower," if it means anything, means the law which is expressly entitled the law "Of Dower," including the section in question, which further states that this particular estate is "by way of dower." This section moreover

is not confined in its operation, as is the statute of descents, to cases of persons dying "intestate." It is paramount to both the statute of wills and the statute of descents, although where there are no children the wife's dower right may be merged in her right by descent (*Est. KamehamehaIV.*, 2 Haw. 715). It is argued further that the estate cannot be a dower estate because it is subject to the husband's debts. But this is true also of dower in real property in some states. So; too, the power of the husband to dispose of the property free of dower right during his lifetime without a release by the wife, exists in some states even with reference to real estate.

In the second place, it is argued that the statutory provision in question had its origin or suggestion in the "*pars rationabilis*" of the early common law, and that this was a right of succession, not a marital right. If so, and there is no evidenve that it is so, then, on the one hand, there is no reason why the legislature could not, as we shall see they did, expressly make the estate one by marital right, and, on the other hand, the estate must, against counsel's contention, have the element of not being subject to the husband's will, for that was the case with the wife's "reasonable part." That the estate is a dower estate, notwithstanding the history of the "*pars rationabilis*," see *Stone v. Stone*, 18 Mo. 389; *Crecilius v. Horst*, 89 Mo. 356.

To come down to more recent history—Hawaiian history— and the expressed intention of the legislature, we shall find that the estate is one by way of dower or marital right beyond any question. It was within the power of the legislature to define dower. In scarcely any two countries is the statutory definition of dower the same. Even under that part of our own statute which relates to dower in real estate the ordinary common law definition of dower is not followed but it is extended to leasehold and all freehold interests instead of being confined to estates of inheritance. There is no more reason why "dower" should not be a subject of statutory definition than there is why "heirs" should not be, and yet our statutory defini-

tion of "heirs" is different from the common law definition. That the estate in question was intended to be a dower estate is clear, because, (1) it is not limited to cases of intestacy; (2) it is expressly said to be "by way of dower;" (3) it is coupled in the same section and sentence with dower in real estate, of which there can be no question; (4) it is part of an Article entitled "Of Dower;" (5) this Article is part of a chapter entitled "Of Husband and Wife," which contains three Articles entitled respectively "Marriage," "Of Dower," and "Of Divorce and Separation," thus showing that the estate was intended to be by virtue of the marriage relation, as a marital right, and not an estate of inheritance which naturally belongs and is put by the statute in an entirely different category; (6) the history of the law confirms this view, for when first passed in 1846, four years before the statute of descents was passed and thirteen years before the passage of the Civil Code of which it is now a part, it was made, with the subjects of marriage and divorce, a subdivision of the chapter defining the duties of Governors who then had special charge and jurisdiction over such matters while questions of descent were left to the ordinary courts, and the substance of the section in question was then part of a section under the Article relating to marriage and immediately followed the section (afterwards Section 1286 of the Civil Code) which defined the marital rights of the husband, and was part of a section which also defined the other marital rights of the wife (afterwards Section 1287 of the Civil Code), and it there expressly described the estate as going to the wife "in virtue of her marriage" as well as "by way of dower" and inseparably connected it with the dower estate in real property, by having the words "The wife shall be entitled to" in place of the words "Every woman shall be endowed of," found in the first part of 1299, and merely the word "and" in place of the words "she shall also be entitled," found at the beginning of the latter half of the section.

No case has been found in support of the view that under

statutes and facts similar to those involved in this case the wife could be included under the term "heirs." The case most like the present is *Gauch v. St. Louis M. L. Ins. Co.*, 88 Ill. 251. In that case the question was, as here, whether the children alone or the children and widow should take under the term "his legal heirs," as used in a policy of insurance. The statutes were similar to ours in all essential respects. Where they differed, they were more favorable to the widow than are our statutes. The court held that if there were no children, the widow would be an heir under the statute of descents, but that, as there were children, they took all, and that the widow could not be considered an heir as to one-third of the personal property, although it was an absolute, not a life, estate and was subject to the husband's debts.

So far as we can see, the devise and bequest in question is a plain gift to the "heirs," without any qualification as to the persons who are to be heirs, and therefore such persons are to be determined by the statute of descent as applied to the facts existing at the time of the death of the person spoken of; and the provision in the will directing that the property shall "be divided as now prescribed by the laws in cases of persons dying intestate" relates merely to the method of division and would be implied even if not expressly set forth, except in so far as the laws are limited by the will to those then in force; and the subsequent clause, providing for the case of the death of a beneficiary before the testator, directs merely that such death shall make no difference in the course of the devolution of the property and is in perfect harmony with the earlier clauses of the will.

The decree appealed from is affirmed.

*Kinney & Ballou,* for defendant Mary S. Carter.

*A. S. Hartwell,* for defendants, the minors.